Good morning, Your Honor. May it please the Court, Jennifer Neal, Supervising Deputy Attorney General, on behalf of the Appellant Warden, I would like to reserve two minutes for rebuttal. The Court's review of this case is constrained by the Anti-Terrorism and Effective Death Penalty Act. Well, why is that? Doesn't that act only apply when there's been a decision on the merits? Yes, Your Honor, and here there has been a decision on the merits by the California Supreme Court. They issued a summary denial, and summary denials are denials on the merits. Well, we look through to the last reasoned decision, don't we? Generally, Your Honor, yes. Under Ilst v. Nonemaker, the Court would look through to the last reasoned decision. And the last reasoned decision said it was a Walters denial. That is correct, Your Honor. That's what the Butte County Superior Court said. Now, in Ilst v. Nonemaker, the Supreme Court said it would look through to the last reasoned decision when it's a procedural denial, and that, in this case, the Respondent or the Appellant in this Court can overcome that presumption by strong evidence. In this case, there is evidence that the California Supreme Court considered the matter on the merits. What's the evidence? In the excerpts of record at page 3 is the letter from the California Supreme Court to the Respondent Warden directing that an answer be filed on the merits of the petition filed, and indeed as confirmed in Pertl's brief to this Court, the parties did brief fully the merits of Mr. Pertl's arguments before the California Supreme Court. And that is what they issued their summary denial on, was their determination of the merits. Therefore therefore. You say they briefed in this Court the merits or in the California Supreme Court the merits? The parties fully briefed the merits in the California Supreme Court. Mr. Pertl's brief in this Court acknowledges that the parties fully briefed the merits in the California Supreme Court. And the California Supreme Court said nothing that would indicate it reached the merits? They issued a summary denial after requesting full briefing on the merits. They did not issue a reasoned decision indicating fully the basis for their decision, but they did ask for merits briefing. And how does that tell you that they did not, after getting the merits briefing, decide, after reviewing the decision of the California Supreme Court that was procedurally barred, that they determined that they couldn't reach the merits? Well, they did not indicate that that was barred by a procedural. They didn't screen it out. Initially they didn't indicate either way. They did not indicate either way. The reasonable inference is that since they asked for briefing on the merits and it was fully briefed on the merits, that their summary denial was a denial on the merits. So I submit that then this case is constrained by the Anti-Terrorism and Effective Death Penalty Act. Is there any case that says that in California, that if they ask for briefing and then summarily affirm a procedural denial, that the asking for briefing suggests that they did actually reach the merits? Not that I'm aware of, Your Honor. Aren't you asking us for a lot of deference to silence? Why shouldn't we be told? Why should we have to guess? Well, it would certainly be helpful if the California Supreme Court would tell everyone involved. Yes, it would. It would, Your Honor. However, under Ilst, the Respondent in this case, the appellant, is allowed to present evidence to the court to make that suggestion, and that's what has been done in this matter, that since the court has asked for briefing on the merits, an answer on the merits, and that was filed. There's only one Let's assume for the moment that it was not a decision on the merits. Correct, Your Honor. If we assume it was not a decision on the merits, then this Court's review is still limited to determining whether the State violated Federal law. Yes. Habeas Corpus is only available based on a violation of the Constitution laws and treaties of the United States. In this case, the Federal law governing parole is Greenholz, in which the Supreme Court has confirmed that due process is satisfied so long as the inmate receives an opportunity to be heard and a statement of reasons for the decision. Well, in that case, if it's covered by Federal law, we This Court has already decided what Greenholz means, and we've decided it means some evidence. Yes, Your Honor. This Court has established that, although the Supreme Court has never spoken, that some evidence. You're not going to re-argue. Don't re-argue Haywood. Just move on to something else. I will move on to something else, to the evidence in this case, Your Honor. I would just like to point to the Court to Duhaime v. Ducharme and Crater v. Galazza, in which this Court has realized that Federal habeas corpus really can only be granted on the basis of clearly established Federal law. No, we've said that when it's under IPPA. Correct, Your Honor. All right. So we're now assuming that it's not under IPPA because there's no merits decision by the California courts. If that is the assumption the Court is making, yes, Your Honor, then I'll move on. And that's where we're starting for the purpose of the rest of this discussion. Yes, Your Honor. What we have here is Pirtle's allegation of a disagreement with the board's ultimate conclusion that he is not suitable for parole. Pirtle does not challenge the evidence that was before the board. Rather, he challenges the weight the board gave to the evidence. Is this a particularly egregious offense because the man came into a bar and his wife told him she was going home with another man, and he put his arms around her and shot her? That's particularly egregious? Or what is it that he shot her? Your Honor, there's no finding in this case that that is a particularly egregious crime because the crime alone was not the only factor relied upon by the board. Under California law, that the second step is only when a finding is made on the crime alone. Here, the board relied on the crime, Mr. Pirtle's escalating pattern of criminal conduct, his unstable social history, and overarching all of that is his failure to participate since 1994 in substance abuse treatment for alcoholism, which Because he had religious objections. He has a religious objection to part of the Alcoholics Anonymous program. However, he's not availed himself in prison of any other secular, what he would consider secular-type programs or self-help. And the board was concerned, since his commitment offense, his prior criminal history that includes driving while under the influence, felony conviction and misdemeanor for driving under the influence, as well as his domestic violence history, all had to do with alcoholism. Problem that led to the crimes. Exactly. How many years ago was that? His crime was in 1980, Your Honor. So 28 years ago, he had an alcoholism problem. Has he had any since then? As far as we know, he has not had any alcohol since he's been in prison, at least none that he's been disciplined for. Which you would think is sort of standard. But doesn't the record indicate that there is some drinking in the prison, as well as there is drug use in the prisons? That's probably common knowledge, Your Honor. Yes, through the media, it does happen. And he was not one who engaged in drug use or alcoholism or alcohol absorption, ingestion, while he was in prison. There's no record, there's no evidence in the record that he did, Your Honor. I think there's a record about that. Correct. So as far as we know, the record shows 28 years of sobriety, which caused, is escalating problems from drinking and driving to drinking and shooting his unfaithful wife. Correct. And other than that, there's nothing that indicates he would be a current danger to society? There is other than that, Your Honor. Yes, the board, the crime, that's all the factors that the board relied upon. When the board goes through the state factors. I thought I mentioned those factors. The increasing alcoholism problem and the fact that he didn't go to a religious program in the prison. Right. Well, the crime, his criminal history, aside from the crime, his escalating pattern of criminal conduct, his unstable social relationships, and the alcoholism. All four were factors that were considered, and the board ultimately. All four really relate to alcoholism? They all have alcoholism tied in with them, but even without the alcohol tied into them. What were the secular options that he had that he didn't avail himself of? There are secular options such as self-help groups that he could have participated in. In prison. In prison, self-study is available. He could get materials from the outside from a group other than AA, and he could inform the board that he'd been participating or doing self-study in those programs. And the record, as the board found, does not reflect that he had done any of that since 1994. I would like to reserve the remainder of my time for rebuttal. Thank you. May it please the court, Anne McClintock, Federal Defender's Office, on behalf of Mr. Purtle. I'm sorry? Anne McClintock, on behalf of Mr. Purtle. Oh. Sorry. Pick up my voice. I wanted to start with the merits discussion, whether there's 2254d, as the Court's already addressed this. As we pointed out in our briefing, there is clearly the clear California Supreme Court case on talking about what the effect of a denial of petition for review is. Everything that the Attorney General had said about the review by the California Supreme Court would have made sense had it been an independent petition for habeas relief. It wasn't. It was a petition for review, and under Troop v. Katz, which was cited in the brief, that kind of decision is not a merits decision. It reflects nothing about what the California Supreme Court decided on the case. So I think this is a case, as we briefed, that is independent of 2254d, but it's still we're subject until the law changes, if it ever changes, to the sum evidence standard. So that brings us to the facts of this case. What I thought I heard the Attorney General responding was a concession that there was nothing particularly egregious about the commitment offense and the facts. There's no dispute about what happened, Mr. Purtle's motivation for what happened, the role that alcohol played, although he had originally had some question about what state of drunkenness he was in. This is a case that is a tragic second-degree murder, and that is all. The factors that the magistrate very ably went through in discussing the facts, she detailed them, we repeated them in our brief. She looked at all these factors to show that each of the five, I believe, ways that the Board parsed his unsuitability are unreliable. There's no evidence to support them. The key point the key point. Kennedy. What about the nonparticipation in AA, given his religious objections, then some alternative to that? I think that given her answer, saying some kind of self-help, is an acceptable response. So it's something of a red herring that he's not going to a documented program. What is the evidence amply demonstrates for Mr. Purtle from his documentation hearing and before his first hearing all the way through, through the psychiatric reports and through the counselor's reports, is that he has been, he's an alcoholic in remission, and he's been in remission his entire time in prison. Well, you know, if I'm sitting on the parole board and I see somebody who's in a controlled discipline setting, and he behaves, and I accept the proposition that alcoholism is a chronic disease, what do I do if I'm trying to judge whether or not he has the discipline, self-discipline when he gets out? Where he's not within the purview of everybody, and where he has free access to alcohol, but he won't fall off the wagon and suddenly wind up in the circumstances that led him to drive drunk or engage in domestic violence or the like. I think the one way to do that is to assess his statements about his commitment to an alcohol-free life, and he explained it, I think it was rather colorfully at one point, that he understands that alcoholism for him is like sticking his hand in a rattlesnake jar, and that's just going to get somebody killed, whether it's him or someone else. Well, I understand, but you know, words are words, and conduct is conduct, and what might make me feel better if I saw that he was vigorously pursuing whatever was available that didn't cross his religious threshold in terms of taking whatever was available to demonstrate that he was very serious about that. Well, I think that his behavior in prison, when it was advised, recommended to him as part of the 1994, I think, grant of parole that he participate in alcoholism treatment, he went to AA for four years. Yeah, but then they canceled it. They revoked his parole after he did that, and so he was upset, and he said, I'm not going to do it anymore. Well, I mean, he was willing to do it despite his religious objections to it. There's nothing in the evidence, and he has said that he can't find a non-religious AA program. He is committed to it on his own, and I think when you look at his disciplinary – That's what I'm asking. That's why I asked the question. I understand that's what he said. But the Attorney General said there are alternatives within prison that would meet his criteria, and you're saying, well, they're just self-help, he didn't have to do that. Well, the only alternative she gave him was a self-help program of him contemplating doing reading. There's no evidence in this record, and none that I'm aware of from just dealing with clients in this situation, that there is a non-religious-based AA program. No, I didn't understand it to be that. I'm just saying that there was something he could have done. Well, he did do – he has gone through prison, where, as we've already mentioned, that there are alcohol and drug is readily available, unfortunately. He has gone through prison, and he has towed the line completely. He's an exemplary employee. He's done what he's supposed to do. He has not just one – no 115 disciplinaries. He has – I understand. I'm – But it goes back to your question about how do we trust his discipline and his ability, and I think that's all reflective of he is a disciplined person who understands the consequences in a very severe way of what his drinking did and his behavior, and is committed to reform, and has reformed himself. Now, he is also committed to finding and participating in a non-religious AA program upon release, and he said that at – consistently at several of the hearings. So I think the fact that he is 28 years now – How are those enforced? One thing for him to say so. How does someone on parole in California – how is it made clear to the authorities that he, in fact, does that and stays with them? Well, between the time that the board would find someone suitable, sets the date, and he's actually released on parole, there is a parole plan investigation that's done by probation office. It can be the local probation office up in Gridley, or in Butte County, where he is. He is under parole supervision, and so the parole officer can interview him. He could subject him to a urine test. He could say, well, when are you going to this meeting? You know, are you there? What happened? He can do a variety of things to follow up and make sure that his commitment is actually going in place. He can have him come in or make random stops at his house to find out, you know, is there any sign of drinking? Is there any sign of alcohol in the home? They can take a variety of limitations and subject him in order to assure the reliability of not only his commitment to it, but that he's actually following through on that commitment. Can I ask you a question of someone in the same area? Did he understand that he was jeopardizing his parole by saying he wouldn't follow any program? At the time that he made the decision, I don't think he did. So this was the first time the parole board had told him that. Is that correct? The 2002 hearing, no. I think in the past they had said you're still not doing AA and we would like you to be doing some kind of program. So he had some warning there, this is going to operate negatively against you. Is that correct? Before the 2002 hearing, I think that's probably correct. Because as I say, I think Judge Fischer puts it, if you're on the parole board and the prisoner is not wanting to be very cooperative, that's a negative sign. It's one sign that would be one negative on an otherwise exemplary, near perfect prison pool of information that shows that he's suitable. It is one sign that's reflective of his non-religious beliefs and it's something that he's discovered that. He could do some secular thing. Well, I don't know that there's anything secular that he could do that would be acceptable to the board or would be demonstrated the same way that would be different than what he's already done, which is make his self-commitment to it. And my point really is that there is ample evidence of his commitment and his ability to abstain from alcohol through 28 years of psych reports that show, that have assessed him for whether alcohol is still a problem and consistently found that it isn't. The only other point that I wanted to make, there were several comments about the unstable social history. And it is clear, as the magistrate judge discussed, that the only unstable social history that Mr. Pirtle had involved his tragic relationship with the victim. The marriage was unstable, the alcoholism was involved, but he had other marriages that were stable, they ended in divorce, but there's nothing else in his history that shows an unstable history, unless there are other questions I'd submit. Thank you. Your Honors, counsel for Mr. Pirtle is again asking this court to do just what the district court did, which is to parse through the evidence before the board, reweigh that evidence, and come to the court's own independent conclusion about Mr. Pirtle's suitability for parole. Under the proper application of the sum evidence test, that is not allowed. It is for the board to review the suitability factors, give them each weight, and determine whether Mr. Pirtle is yet ready to be released back into California society. The board concluded that he is not yet ready, that he continues to be an unpredictable risk of threat to others. With that, I'd like to submit that the district court should be reversed. Thank you, counsel. Thank you. Case just argued will be submitted.
judges: Reinhardt, Noonan, Fisher